UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BEAR CREEK CRANBERRY CO., LLC,          **DECISION AND ORDER**

                      Plaintiff,

                                                                     10-CV-00770(A)(M)

v.

CLIFFSTAR CORPORATION,

                      Defendant.
_____

## INTRODUCTION

This action has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings in accordance with 28 U.S.C. §636(b)(1) [27].[1] Before me is the remaining aspects of plaintiff Bear Creek Cranberry Co., LLC's ("Bear Creek") motion to compel [58] seeking defendant Cliffstar Corporation's ("Cliffstar") contracts with other growers that contain a pricing clause similar to the pricing clause in the parties' April 2008 Cranberry Marketing Agreement ("Agreement") and its attorney's fees and costs in connection with this motion. June 29, 2011 Axelrod Letter [79], p. 6. All other aspects of Bear Creek's motion to compel [58] have been resolved by stipulation [74]. For the following reasons, I order that this aspect of Bear Creek's motion be denied, without prejudice.

## BACKGROUND

Bear Creek is a Wisconsin cranberry grower. An addendum to the Agreement provided that for the first four years of the term of the Agreement (2008-2011) Cliffstar would pay a minimum price $62.00/barrel, but that the yearly base price would be established by

---

[1]       Bracketed references are to the CM/ECF docket entry.

matching the highest base price of the three other major handlers.  Sanvidge Declaration [42-2], Ex. A.  The complaint alleges that Cliffstar underpaid Bear Creek by $21.00/barrel for the 2008 crop.  Complaint [1-1], ¶16, Fourth Claim.  Cliffstar has asserted an affirmative defense to this claim, alleging that Bear Creek failed to provide proper documentation establishing that it was entitled to a higher payment for the 2008 crop.  Answer [26], Second Affirmative Defense.

On November 29, 2010 Bear Creek served document demands on Cliffstar.  Axelrod Declaration [60], ¶3,  Ex. B.  Among the requests, Bear Creek sought "[c]opies of all contracts and related Documents between Cliffstar and any cranberry Grower other than Bear Creek in the last ten (10) years".  Axelrod Declaration [60], Ex. B, Request # 5.  Remaining in dispute is a subset of documents responsive to this request seeking Cliffstar's contracts with other growers that contain a pricing clause similar to the pricing clause in the Agreement.  June 20, 2011 Axelrod  Letter [75], p. 2.  According to Bear Creek, this information is relevant, as Cliffstar has submitted a declaration from Kevin Sanvidge in support of its cross-motion for summary judgment, which stated that "Cliffstar has entered contracts with similar pricing schemes and in cases such as the present Cliffstar always requires that the grower provide formal documentation that substantiates the grower's claim that another major handler has been paid a higher base price".  Sanvidge Declaration [42-2], ¶16.  Bear Creek also argues that Cliffstar waived its objections to this request by failing to timely respond.  June 20, 2011 Axelrod  Letter [75], p. 3.

Cliffstar concedes that there are three contracts responsive to this request, but argues that "the minimal likelihood that the documents will lead to the discovery of relevant evidence weighed against the serious consequences to Cliffstar's business if such sensitive

information were disclosed, mandates that the motion be denied". June 24, 2011 Gaffney Letter [78], p. 3.

In the event these contracts are ordered disclosed, the parties differ on what should be disclosed and the confidentiality protections that should be in place. Although Bear Creek argues that Cliffstar has failed to put forth any evidence supporting its claim of confidentiality, it has no objection to the entry of a protective order. June 29, 2011 Axelrod Letter [79], pp. 3, 6. However, Cliffstar argues that a protective order restricting disclosure and use of the three contracts is insufficient, because disclosure would "reveal terms that were the subject of negotiations with the other parties who are interested in having a competitive edge over other growers" and "even if [this information is] not utilized outside of this litigation in any overt way, [it] will inevitably manifest itself as intangible background knowledge in contract discussions". June 24, 2011 Gaffney letter [78], pp.2-3. Alternatively, Cliffstar proposes to either: 1) provide the three growers named in the contracts and stipulate that "none of [the three contracts] contain any language that specifically requires that formal documentation be provided to Cliffstar" and that "one of them contains a phrase that only very generally puts the onus on the grower regarding a higher price, and the other two are completely silent on the issue" (June 24, 2011 Gaffney letter [78], p.2); or 2) redact "specific pricing details and other sensitive information". Id., p. 3.

**ANALYSIS**

At the outset, I must determine whether Cliffstar has waived its objections. "Courts have held that a failure to respond or object to a discovery request in a timely manner

-3-

waives any objection which may have been available." Land Ocean Logistics, Inc. v. Aqua Gulf Corp., 181 F.R.D. 229, 236 (W.D.N.Y. 1998)(Foschio, M.J.). "[H]owever, waiver is generally imposed only where the party is unable to provide an explanation for its late response". Callaway Golf Co. v. Corporate Trade Inc., 2011 WL 1642377, *2 (S.D.N.Y. 2011).

Cliffstar's response to Bear Creek's November 29, 2010 discovery demand was served on or about April 11, 2011. June 24, 2011 Gaffney Letter [78], p. 5. Cliffstar attempts to explain its delinquency by arguing that it timely objected to a similar request (limited to Wisconsin growers) by Bear Creek while this matter was pending in State Court. June 24, 2011 Gaffney Letter [78], pp. 4-5; June 29, 2011 Axelrod Letter [79], pp. 4-5. Although I do not find this particular explanation persuasive, it also explains that the delay was attributable to the fact that shortly after the service of this request, there was discussion at the December 3, 2011 preliminary pretrial conference that the case was ripe for summary judgment without extensive discovery, which was followed by Bear Creek's January 24, 2011 motion for summary judgment [35] and Cliffstar's cross-motion for summary judgment [42], which placed this discovery on the backburner until Bear Creek indicated that this information was necessary for its sur-reply. June 24, 2011 Gaffney Letter [78], p. 4. Given this proffered explanation for the delay and the limited prejudice to Bear Creek from the delay, I conclude the harsh sanction of waiver of objections is not warranted. See Melendez v. Greiner, 2003 WL 22434101,*2 (S.D.N.Y. 2003) (finding no waiver where despite being over five months late, defendants provided an explanation for the delay and plaintiff demonstrated no prejudice from the delay).

Fed. R. Civ. P. ("Rule") 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense". Significantly, Cliffstar

does not argue that any of the contracts are privileged, but rather that portions are "both irrelevant and confidential". June 24, 2011 Gaffney Letter [78], p. 3. I reject Cliffstar's blanket objection to the disclosure on relevancy grounds. Cliffstar itself appears to concede that portions of these contracts are relevant to Bear Creek's claims. June 24, 2011 Gaffney Letter [78], p. 3 ("redaction of sensitive terms protects Cliffstar and yet still provides Bear Creek with the relevant portions of the documents, namely the language around the pricing as it relates to the need of the grower to provide formal documentation").

"[C]ourts have found redaction appropriate where the information redacted was not relevant to the issues in the case". Spano v. Boeing Co., 2008 WL 1774460, *2 (S.D.Ill. 2008) (*citing cases,* including Schiller v. City of New York, 2006 WL 3592547, *7 (S.D.N.Y. 2006)). Given the fact that Bear Creek does not specifically contest Cliffstar's allegation that only portions of the contracts are relevant, and it appears that there is only a limited aspect of the contracts, which are relevant to Cliffstar's defense that it required growers with similar pricing schemes to provide formal documentation of price, I conclude that Cliffstar may produce the contracts in redacted form. Recognizing that "[b]oth sides should have meaningful access to [confidential] information. . . ,where it can be reasonably shown to be 'relevant' to the prosecution or defense of a claim", Johnson Foils, Inc. v. Huyck Corp., 61 F.R.D. 405, 409 (N.D.N.Y. 1973), Cliffstar may not redact relevant information from the contracts merely because it is confidential. If there is confidential yet relevant information, the parties shall confer in an attempt to reach agreement on a protective order concerning the disclosure of this information. *See* 8A Wright–Miller–Kane, *Federal Practice & Procedure (Civil)*, §2043 (3d Ed.2011) (" It is well settled that there is no absolute privilege for trade secrets and similar

confidential information; the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure").

## CONCLUSION

For these reasons, the remaining aspects of Bear Creek's motion to compel [58] seeking Cliffstar's contracts with other growers that contain a pricing clause similar to the pricing clause in the Agreement and its attorney's fees and costs in connection with this motion are denied, without prejudice.

**SO ORDERED**.

Dated: July 15, 2011

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge